**NO. 26-10696**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**TEMPLE GUN CLUB, INC., JEFFREY HOWARD, JASON ARMSTRONG AND CLARK MIRCALE**
***Plaintiffs-Appellants*,**

**v.**

**TODD WALLACE BLANCHE, U.S. ATTORNEY GENERAL, DANIEL DRISCOLL, ACTING DIRECTOR, U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, BRIAN GARNER, IN HIS OFFICIAL CAPACITY AS SPECIAL AGENT IN CHARGE OF THE DALLAS FIELD DIVISION OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, MICHAEL WEDDEL, IN HIS OFFICIAL CAPACITY AS SPECIAL AGENT IN CHARGE OF THE HOUSTON FIELD DIVISION OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,**
***Defendants-Appellees.***

On Appeal from the U.S. District Court
for the Northern District of Texas, Fort Worth Division

# APPELLANTS' OPPOSED MOTION FOR INITIAL HEARING EN BANC

## CERTIFICATE OF INTERESTED PERSONS

No. 26-10696; *Temple Gun Club, Inc., et al v. Bondi, et al*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

Appellants: Temple Gun Club, Inc.
Jeffrey Howard
Jason Armstrong
Clark Miracle

Appellants' Counsel: Robert Henneke
Texas Bar No. 24046058
rhenneke@texaspolicy.com
Chance Weldon
Texas Bar No. 24076767
cweldon@texaspolicy.com
Eric Heigis
Virginia Bar No. 98221
eheigis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700

Trial Counsel: Robert Henneke
Texas Bar No. 24046058
rhenneke@texaspolicy.com
Chance Weldon
Texas Bar No. 24076767

cweldon@texaspolicy.com
Eric Heigis
Virginia Bar No. 98221
eheigis@texaspolicy.com
Laura Elizabeth King Latimer
Texas Bar No. 24116619
lblatimer@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700

Appellees: Todd Wallace Blanche, U.S. Attorney General
Daniel Driscoll, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives
Brian Garner, in his official capacity as Special Agent in Charge of the Dallas Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives
Michael Weddel, in his official capacity as Special Agent in Charge of the Houston Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives

Appellees' Counsel: Michael S. Raab
DC Bar No. 420125
michael.raab@usdoj.gov
Sean R. Janda
Virginia Bar No. 92694
sean.r.janda@usdoj.gov
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Ave., Room 7237
Washington, DC 20530
Telephone: (202) 616-5142

Trial Counsel: Jody D. Lowenstein
Mont. Bar No. 55816869
jody.d.lowenstein@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 598-9280

*/s/Chance Weldon*
CHANCE WELDON
*Counsel for Plaintiffs-Appellants*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ ii

INDEX OF AUTHORITIES ........ vii

INTRODUCTION AND RULE 40(B) STATEMENT ........ 1

ISSUES MERITING EN BANC CONSIDERATION ........ 3

STATEMENT OF THE CASE ........ 3

ARGUMENT ........ 5

I. Initial *En Banc* Review Is Warranted Because *Knutson* Forecloses Relief Before a Panel ........ 5

II. *Knutson's* Commerce Clause Holdings are in Tension with Existing Precedent on Matters of Exceptional Importance that this Court has Already Expressed Interest in ........ 6

A. *Knutson* was in tension with Supreme Court precedent when it was decided ........ 7

B. Subsequent cases show that *Knutson* applied the wrong test ........ 10

C. *Knutson* is difficult to square with the multi-consideration approach of *Morrison* ........ 12

D. Members of this Court have recently recognized the importance of these issues ........ 14

III. Granting Initial *En Banc* Review Will Ensure that this Court has a Clean, Less Complicated Vehicle to Address the Commerce Clause Issues that it Already Seeks to Address *En Banc* in *Squire* ........ 15

CONCLUSION ........ 17

CERTIFICATE OF COMPLIANCE ........ 18

CERTIFICATE OF CONFERENCE ........................................................................ 19

CERTIFICATE OF SERVICE ............................................................................... 19

## INDEX OF AUTHORITIES

***Cases:*** ***Page(s):***

*Am. Stewards of Liberty v. DOI*,
960 F.3d 223 (5th Cir. 2020) .......... 14

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) .......... 14

*GDF Realty Invs., Ltd. v. Norton*,
326 F.3d 622 (5th Cir. 2003) .......... 12

*Gonzales v. Raich*,
545 U.S. 1 (2005) .......... 10, 12

*NFIB v. Sebelius*,
567 U.S. 519 (2012) .......... 11

*Sackett v. EPA*,
598 U.S. 651 (2023) .......... 14

*Smith v. United States Dep't of the Treasury*,
761 F.Supp.3d (E.D. Tex. 2025) .......... 10

*Smith v. United States Dep't of the Treasury*,
No. 25-40071, 2025 LX 71056 (5th Cir. May 20, 2025) .......... 14

*Taylor v. United States*,
579 U.S. 301 (2016) .......... 16

*Terkel v. CDC*,
521 F.Supp.3d 662 (E.D. Tex. 2021),
appeal dismissed as moot without vacating judgment,
15 F.4th 683 (5th Cir. 2021) .......... 11, 14

*United States v. Alcantar*,
733 F.3d 143 (5th Cir. 2013) .......... 5

*United States v. Comstock*,
560 U.S. 126 (2010) .......... 16

*United States v. Hemani*,
No. 24-1234, 2026 LX 312182 (June 18, 2026) .......................... 7, 15

*United States v. Knutson*,
113 F.3d 27 (5th Cir. 1997) ...................1, 2, 4, 7, 8, 9, 10, 12, 13, 14

*United States v. Lopez*,
2 F.3d 1342 (5th Cir. 1993),
aff'd, 514 U.S. 549 (1995) .................................. 1, 2, 8, 9, 10, 12, 13

*United States v. Mitchell*,
160 F.4th 169 (5th Cir. 2025) ........................................................ 17

*United States v. Morrison*,
529 U.S. 598 (2000) ...................................................... 1, 11, 12, 13

*United States v. Rybar*,
103 F.3d 273 (3d Cir. 1996) ...................................................... 8, 15

*United States v. Squire*,
No. 25-30324, 2026 LX 388477
(5th Cir. July 20, 2026) ..................................... 2, 4, 5, 6, 14, 15, 17

*United States v. Wilson*,
164 F.4th 380 (5th Cir. 2026) ........................................................ 13

*United States v. Wilson*,
174 F.4th 474 (5th Cir. 2026) ........................................................ 14

*Williams v. Catoe*,
946 F.3d 278 (5th Cir. 2020) .......................................................... 5

***Statutes:***

18 USCS § 922 ............................................................1, 2, 3, *passim*

***Other Authorities:***

132 Cong. Rec. 7085 (1986) ........................................................... 13

St. George Tucker ed., Lawbook Exchange Ltd. 2011 (1803).................. 7

Webster's Third New International Dictionary 720 (1966).................... 12

## INTRODUCTION AND RULE 40(B) STATEMENT

This appeal presents questions of exceptional importance regarding whether there is any meaningful limit on Congress's authority under the Commerce Clause and Necessary and Proper Clause.

Appellants are law-abiding citizens that would like to modify firearms that they already own. The firearms are made in Texas and modifying them would not require additional commercial activity. Nevertheless, under 18 U.S.C. § 922(o) doing so would constitute a federal crime.

Under modern Supreme Court precedent such as *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000), this restriction on purely intrastate activity raises significant concerns under the Commerce Clause and the Necessary and Proper Clause. But under a thirty-year-old panel opinion from this Court upholding § 922(o), the district court was required to dismiss this case. See *United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (per curiam)). Appellants now seek to lift this bar to review.

Initial *en banc* review is appropriate for three reasons. First, judicial efficiency favors initial review. As the district court rightly recognized, Appellants' claims are barred by the prior panel opinion in *Knutson*, which may only be reconsidered *en banc*. Under the rule of orderliness, any panel hearing would be futile.

These judicial efficiency concerns are heightened because this Court recently agreed to *en banc* rehearing in *United States v. Squire*, No. 25-30324, 2026 LX 388477 (5th Cir. July 20, 2026)—a more procedurally and doctrinally complicated Commerce Clause challenge to a separate provision of § 922. Granting initial *en banc* review here would allow the Court to consider these related cases at the same time.

Second, this case presents the type of important question that would ordinarily justify *en banc* review after panel hearing. As explained below, the reasoning in *Knutson* is in tension with the original public meaning of the Commerce Clause, the reasoning in *Lopez*, and subsequent developments in Commerce Clause doctrine. Indeed, several members of this Court have recently questioned its continuing validity. As Commerce Clause questions increasingly arise in this Circuit, addressing these doctrinal inconsistencies is important.

Finally, granting initial *en banc* review now would provide this Court an alternative, cleaner vehicle to address many of the Commerce Clause issues in *Squire* at the same time it is deciding that case. Unlike the statute at issue in *Squire*, § 922 (o) does not turn on a prior conviction for a separate crime and does not contain a jurisdictional element requiring a connection to interstate commerce. It prohibits law abiding citizens from possessing certain firearms—full stop. And unlike the plaintiff in *Squire*, Appellants were not convicted of trafficking heroin—a crime which, by definition, involves interstate commerce.

This case therefore presents a cleaner vehicle to address the Commerce Clause questions this Court believed were important enough to grant *en banc* review in *Squire*.

## ISSUES MERITING EN BANC CONSIDERATION

Whether Congress may, consistent with the Commerce Clause and Necessary and Proper Clause, criminalize law-abiding citizens' possession of firearms that were made, possessed, and modified entirely within one State?

## STATEMENT OF THE CASE

The Sons of Liberty AR-15 is a semi-automatic rifle manufactured wholly within the state of Texas. It can be easily converted to a fully automatic machine gun at home with basic tools.

The Temple Gun Club (the "Club") is a local Texas shooting club. It has members in Texas who own AR-15s and have the tools, skills, knowledge, and willingness necessary to convert those guns into machine guns at home.

It is undisputed, however, that they may not do so without committing a federal crime. With limited exceptions, 18 U.S.C. § 922(o), makes it a crime to possess a machinegun made or converted after 1986. This prohibition applies regardless of whether the gun is bought, sold, traded, or otherwise moves in interstate commerce. In other words, § 922(o) prohibits bare possession—full stop. It is undisputed that this prohibition is regularly enforced.

The Club and its members (hereafter referred to collectively as "the Club") have therefore refrained from converting their rifles to avoid prosecution under § 922(o).

On March 6, 2026, the Club filed suit seeking a declaration that, both on its face and as applied to it, § 922(o) exceeds Congress's authority under the Commerce Clause and the Necessary and Proper Clause.

The federal defendants promptly moved to dismiss the case for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6). The sole basis of that motion was that the Club's claims were foreclosed by the prior panel opinion *United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (per curiam), which held that § 922(o) was constitutional.

In response, the Club acknowledged that *Knutson* was controlling but noted that several members of this Court had recently called for *Knutson* to be reconsidered. The Club therefore briefed the constitutional issues to preserve them for appeal.

After the federal defendants filed their reply brief, the district court dismissed the case. In doing so, the court noted that the Club had preserved its arguments, but that *Knutson* was controlling.

That same week, this Court granted *en banc* review in *United States v. Squire*—a Commerce Clause challenge to a separate section of § 922, that presents more complicated Commerce Clause issues than those presented here. *United States v. Squire*, No. 25-30324, 2026 LX 388477 (5th Cir. July 20, 2026).

Because *Knutson* forecloses meaningful relief at the panel level, and because hearing this case at the same time as *Squire* would aid this court in fully understanding the Commerce Clause concerns with § 922, the Club now seeks initial *en banc* review in this Court.

## ARGUMENT

### I. Initial *En Banc* Review Is Warranted Because *Knutson* Forecloses Relief Before a Panel.

Ordinarily, cases must pass through a panel before the parties petition for *en banc* review. However, this Court has recently confirmed that process is not required when prior panel precedent would render panel review a meaningless formality. *Williams v. Catoe*, 946 F.3d 278, 279 (5th Cir. 2020).

That is true here. As noted above, the sole question presented in this case is whether § 922(o) is a valid exercise of Congress's power under the Commerce Clause and the Necessary and Proper Clause. But, as the district court rightly recognized below, that question was answered definitively by a prior panel of this Court in *Knutson*. As such, under this Court's rule of orderliness, any panel assigned to this appeal would be bound to apply *Knutson* and affirm dismissal, regardless of the panel's views concerning *Knutson's* correctness. *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013). In such circumstances, initial *en banc* hearing is appropriate, rather than "requiring the matter to percolate uselessly through a panel." *Williams*, 946 F.3d at 279.

Moreover, judicial efficiency concerns are elevated here, because this Court recently agreed to *en banc* review in *Squire*—a Commerce Clause challenge to a separate provision of § 922. *United States v. Squire*, No. 25-30324, 2026 LX 388477, at *1 (5th Cir. July 20, 2026). As explained in Section III below, the Commerce Clause issues in *Squire* are more procedurally and doctrinally complicated than this case. Nevertheless, the way the Court decides those issues may have downstream consequences here. It therefore makes sense for this Court to have the full view of the Commerce Clause issues arising from § 922 when it decides *Squire*.

## II. *Knutson's* Commerce Clause Holdings are in Tension with Existing Precedent on Matters of Exceptional Importance that this Court has Already Expressed Interest in.

Initial *en banc* review is also appropriate because this case involves the sort of issues for which *en banc* review would ordinarily be appropriate. As multiple members of this Court have recently recognized, the way this Court reviews the scope of the interstate commerce power matters. And the way that the panel resolved that issue in *Knutson* is difficult to square with the original public meaning of the Commerce Clause, the understanding of that clause when *Knutson* was decided, and subsequent developments in the Supreme Court's Commerce Clause jurisprudence. As Commerce Clause issues increasingly present themselves in this Court, resolving these tensions is important to this Court's jurisprudence.

### A. *Knutson* was in tension with Supreme Court precedent when it was decided.

Both this case and *Knutson* boil down to a straightforward question: is the federal prohibition on possessing a post-1986 machinegun a "necessary and proper" extension of Congress's power to regulate interstate commerce?

As a matter of original public meaning, the answer to that question is simple—no. *United States v. Hemani*, No. 24-1234, 2026 LX 312182, at *34 (June 18, 2026) (Thomas, J. concurring). The bare possession of a firearm is not itself interstate commerce. *Id.* And founding-era treatises specifically present a hypothetical federal prohibition on firearms possession as an example of a regulation that would be an "improper" expansion of enumerated powers in violation of the Necessary and Proper Clause. 1 St. George Tucker, *Blackstone's Commentaries with Notes of Reference, To the Constitution and Law of the Federal Government of the United States and of the Commonwealth of Virginia*, app. Note D at 288-89 (St. George Tucker ed., Lawbook Exchange Ltd. 2011) (1803).

As a matter of modern Supreme Court precedent, the answer is more complicated, but likely the same. By the time this Court decided *Knutson*, the Supreme Court had expanded the Commerce Clause well beyond its original public meaning. Nevertheless, just two years before this Court decided *Knutson*, the Supreme Court struck down a federal criminal prohibition on the bare possession of a handgun as exceeding

Congress's authority under the Commerce Clause. *United States v. Lopez*, 514 U.S. 549, 567-68 (1995).

As then Judge Alito noted at the time, the machinegun restriction in § 922(o) is virtually indistinguishable from the handgun possession statute struck down in *Lopez*. *United States v. Rybar*, 103 F.3d 273, 287 (3d Cir. 1996) (Alito, J., dissenting). If the reasoning of *Lopez* does not apply with equal force to § 922(o), then *Lopez* is a "constitutional freak" that is "strictly limited to its own peculiar circumstances." *Id.*

The *Knutson* panel's attempts to distinguish *Lopez* were not persuasive.

First, the panel claimed that, unlike the possession of a handgun in *Lopez*, "the vast majority of machinegun possessions constitute the culminating step in interstate commercial transactions." *Knutson*, 113 F.3d at 29. But handguns—just as much as machineguns—often come from an interstate commercial manufacturer. Indeed, the handgun at issue in *Lopez* was manufactured out of state. *United States v. Lopez*, 2 F.3d 1342, 1368 (5th Cir. 1993). And the plaintiff in *Lopez* was paid $40 to bring the gun to school. *Id.* at 1345. Possession of a handgun is therefore just as much a "culminating step in a commercial transaction" as is possession of a machinegun.

Second, the *Knutson* panel held that, unlike the possession of handguns in *Lopez*, it is allegedly "obvious 'to the naked eye'" that "possession of machineguns has a substantial effect on interstate

commerce." *Knutson*, 113 F.3d at 30. But it is unclear why that is so. The best explanation the *Knutson* panel could manage was that banning possession of machineguns would: (1) reduce commerce in machine guns, (2) affect the market for machineguns, and (3) make it easier to fight other crimes. *Id.*

But the same was true in *Lopez*. Restricting the possession of handguns would naturally reduce commerce in handguns, affect the market for handguns, and make it easier to fight other crimes. That was not sufficient in *Lopez* to render the connection between restricting handgun possession and interstate commerce "obvious to the naked eye."

Finally, the panel held that § 922(o) was distinct from the handgun restriction in *Lopez*, because Congress had previously taxed the transfer of machineguns, and therefore, federal regulation of machineguns was not as completely novel as the handgun restriction in *Lopez*. *Knutson*, 113 F.3d at 30. But if a prior tax regime were sufficient to bring something within the commerce power, then there would be no limit to what the federal government could regulate. Congress could wholly circumvent the limitations of the Commerce Clause by simply taxing something before it chose to regulate it.

At a minimum, this tension with Supreme Court precedent should be revisited by this Court.

### B. Subsequent cases show that *Knutson* applied the wrong test.

Next, even if *Knutson* could be squared with *Lopez*, the judicial test for these sorts of challenges has evolved since *Knutson* was decided. Courts have recognized three categories that may be regulated under the interstate commerce power: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and (3) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558-59. *Knutson* was decided under the third category—the "substantial effects test." *Knutson*, 113 F.3d at 30.

The *Knutson* panel framed the substantial effects test as arising under the Commerce Clause, and therefore explicitly applied "rational basis" scrutiny. *Knutson*, 113 F.3d at 28. In particular, the panel claimed that the only question was whether "Congress could have had a rational basis to conclude that its enactment of § 922(o) was a valid exercise of its commerce power." *Id.* at 29 (emphasis in original).

But courts have since clarified that the "substantial effects test" arises under the Necessary and Proper Clause—not the Commerce Clause alone. *Gonzales v. Raich*, 545 U.S. 1, 5, 22 (2005) (majority opinion); see also *id.* at 34 (Scalia, J., concurring) (more fully explaining the relationship between the substantial effects test and the Necessary and Proper Clause); *Smith v. United States Dep't of the Treasury*, 761 F.Supp.3d 952, 963 (E.D. Tex. 2025) ("This third category—commonly

called the substantial effects test—arises under the Necessary and Proper Clause in art. I, § 8, cl. 18, because it only indirectly regulates interstate commerce."); *Terkel v. CDC*, 521 F.Supp.3d 662, 670 (E.D. Tex. 2021) appeal dismissed as moot without vacating judgment, 15 F.4th 683, 685 (5th Cir. 2021) ("The Supreme Court has repeatedly grounded the substantial-effects test in the Necessary and Proper Clause.").

This distinction matters. While the terms "reasonable relationship" or "rational basis" may sometimes appear in Necessary and Proper Clause cases, determining whether a law is a necessary and proper requires more than mere rational basis scrutiny. The Necessary and Proper clause requires a federalism-sensitive, multi-consideration approach designed to ensure that the law is both "necessary"—*i.e.*, "plainly adapted" to facilitate the exercise of an enumerated power—and "proper"—*i.e.*, consistent "with the letter and spirit of the constitution." *NFIB v. Sebelius,* 567 U.S. 519, 537 (2012).

When applying the Necessary and Proper clause in the context of the interstate commerce power, courts look to at least four different considerations. *United States v. Morrison*, 529 U.S. 598, 609–12 (2000)). As explained below, each of those considerations points towards § 922(o) being unconstitutional.

### C. *Knutson* is difficult to square with the multi-consideration approach of *Morrison*.

In *Morrison*, the Court put forward four considerations designed to determine whether the substantial effects test had been satisfied. *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622, 628–29 (5th Cir. 2003) (citing *United States v. Morrison*, 529 U.S. 598, 609–12 (2000)). Those considerations were: (1) whether the challenged law directly regulates economic activity, (2) whether the law contains a jurisdictional element limiting its scope, (3) whether the law is supported by findings establishing an appropriate connection to interstate commerce, and (4) whether the government's theory supporting the law has a logical limiting principle that prevents it from blurring the lines between what is federal and what is local. *Id.* § 922(o) does not fare well under these considerations.

First, § 922(o) does not directly regulate economic activity. That is, it does not regulate "the production, distribution, and consumption of commodities." *Raich*, 545 U.S. at 26 (quoting Webster's Third New International Dictionary 720 (1966)). Rather, as in *Lopez*, § 922(o) prohibits the bare possession of a firearm.

Second, § 922(o) does not contain a jurisdictional element. That is, it does not require the government to prove a connection to interstate commerce to establish a violation of the law. Indeed, of the dozen-plus

restrictions at issue in § 922, § 922(o) is an outlier in lacking any explicit jurisdictional element. It regulates mere possession—full stop.

Third, § 922(o) does not contain findings showing that banning machineguns is essential to a broader regulation of interstate commerce. Indeed, § 922(o) contains no economic findings at all. *United States v. Lopez*, 2 F.3d 1342, 1355 (5th Cir. 1993), aff'd, 514 U.S. 549 (1995). The sole basis given for § 922(o) by its author in the Congressional record was "'I do not know why anyone would object to the banning of machine guns.'" *Id.* at 1356; see also 132 Cong. Rec. 7085 (1986) (statement from Rep. Hughes).

Fourth, there is no limiting principle to the theory of federal power behind § 922(o). According to the *Knutson* panel, the federal government can prohibit the bare possession of machine guns because it could rationally believe that doing so would help "law enforcement to fight violent crime and narcotics trafficking." *Knutson*, 113 F.3d at 31. But under that theory, the federal government could regulate virtually everything. After all, almost anything can be used to facilitate crime. But, "Congress has no power to enact a comprehensive criminal code." *United States v. Wilson*, 164 F.4th 380, 391 (5th Cir. 2026) (Willett, J., concurring). *Knutson* is therefore difficult to square with *Morrison*. At a minimum, it requires reconsideration in light of the *Morrison* test.

### D. Members of this Court have recently recognized the importance of these issues.

Because of these tensions, multiple members of this Court have already called for the reconsideration of *Knutson*. See, e.g., *United States v. Wilson,* 17 F.4th 474 at *1 (5th Cir. 2026) (statement of Willett, J., respecting the denial of rehearing *en banc*).

This growing interest makes sense. The way this Court addresses Commerce Clause issues has reverberations well beyond a single statute involving firearms. Indeed, even members of this Court that would prefer to leave *Knutson* alone agree that the importance of the issue at the heart of this case is "hard to overstate." *United States v. Squire*, No. 25-30324, 2026 LX 388477, at *5 (5th Cir. July 20, 2026) (Higginson, J., dissenting).

In the past decade alone, this Court has seen Commerce Clause challenges to federal vaccine mandates, federal eviction moratoriums, the Corporate Transparency Act, and the Endangered Species Act. *Smith v. United States Dep't of the Treasury*, No. 25-40071, 2025 LX 71056, (5th Cir. May 20, 2025) (CTA); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) (vaccine mandate); *Terkel v. CDC*, 15 F.4th 683 (5th Cir. 2021) (eviction moratorium); *Am. Stewards of Liberty v. DOI*, 960 F.3d 223 (5th Cir. 2020) (ESA). More challenges to federal power are sure to come. See, e.g., *Sackett v. EPA*, 598 U.S. 651, 704 (2023) (Thomas, J. concurring) (noting the Commerce Clause concerns raised by an overly broad interpretation of the Clean Water Act). It is therefore important

that this Court resolve the inherent tensions in its Commerce Clause jurisprudence caused by *Knutson*.

## III. Granting Initial *En Banc* Review Will Ensure that this Court has a Clean, Less Complicated Vehicle to Address the Commerce Clause Issues that it Already Seeks to Address *En Banc* in *Squire*.

Finally, granting initial *en banc* review now will allow this Court to consider this case at approximately the same time as *Squire*—a separate challenge to a related federal gun possession statute, 18 USCS § 922(g)(1). But, unlike *Squire*, this case presents a single, fully preserved Commerce Clause question unencumbered by questions concerning facial challenges, criminal punishment, or statutory jurisdictional elements. It is therefore a substantially cleaner vehicle for considering the scope of Congress's authority under the Commerce Clause and Necessary and Proper Clause.

To begin, the text of the statute at issue in *Squire* makes the Commerce Clause question there more complicated than the question presented in this case. Unlike § 922(o), § 922(g) contains a jurisdictional element specifically tying its scope to "interstate or foreign commerce." 18 USCS § 922. To be sure, the mere existence of that "jurisdictional hook" does not necessarily make § 922(g)(1) constitutional. See *Hemani*, 146 S. Ct. 1677, * 336 (Thomas, J., concurring). But its presence certainly presents additional doctrinal obstacles not presented by § 922(o). See, e.g., *United States v. Rybar,* 103 F.3d 273, 287 (3d Cir. 1996) (Alito, J.,

dissenting) (speculating that the addition of a properly crafted jurisdictional element might cure the constitutional defects in § 922(o)).

Next, unlike § 922(o), § 922(g)(1) does not regulate the possession of firearms directly. Instead, § 922(g)(1) only acts on individuals as a punishment after they have been convicted of certain crimes. 18 USCS § 922(g)(1).

This additional layer matters. Squire was disarmed under § 922(g)(1) after he was convicted for trafficking heroin—an economic activity that, under current Supreme Court precedent, the federal government may lawfully regulate under the Commerce Clause. *Taylor v. United States*, 579 U.S. 301, 307 (2016) (noting that federal prohibitions on drug trafficking are a valid exercise of the interstate commerce power). Therefore, unlike this case, the question in *Squire* is not whether the federal government can regulate the bare possession of a firearm under its interstate commerce power, but instead, whether federally disarming Squire was a constitutional punishment for a state crime for which the interstate commerce power potentially could have been properly invoked. See *United States v. Comstock*, 560 U.S. 126, 136-38 (2010) (recognizing authority under the Necessary and Proper Clause to adopt regulations related to the punishment of otherwise valid federal crimes).

That is certainly an interesting question under both the Necessary and Proper Clause and the Second Amendment. See, *id.*; see also, *United*

*States v. Mitchell*, 160 F.4th 169, 194 (5th Cir. 2025) (holding § 922(g)(1) conflicts with the Second Amendment as applied to marijuana possession convictions). But it is a more complicated question to answer than whether the federal government has authority under the Commerce Clause to prohibit law-abiding citizens from possessing guns that have never crossed state lines.

Neither of those issues are present here. § 922(o) directly regulates the bare possession of firearms by law abiding citizens. Petitioners raised a single claim below—*i.e.*, that § 922(o) is not a necessary and proper exercise of Congress's authority over interstate commerce. And that single question formed the basis of the district court's dismissal.

Granting initial *en banc* consideration in this case therefore ensures that this Court has a clean vehicle to address the Commerce Clause issues raised by § 922 that it already wants to address, even if members of this Court in *Squire* have concerns about the complicated issues in that case.

## CONCLUSION

For the foregoing reasons, this Court should grant this motion for initial *en banc* hearing and consider this case on full briefing and argument.

Date: September 9, 2026 Respectfully submitted,

*/s/Chance Weldon*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
ERIC HEIGIS
VA Bar No. 98221
eheigis@texaspolicy.com
LAURA ELIZABETH KING LATIMER
TX Bar No. 24116619
lblatimer@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because it contains 3,811 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 365 in Century Schoolbook 14-point font for text and 12-point font for footnotes.

*/s/Chance Weldon*
CHANCE WELDON

## Certificate of Conference

Undersigned counsel contacted counsel for Defendants-Appellees and was informed that they oppose the motion.

*/s/Chance Weldon*
CHANCE WELDON

## Certificate of Service

I hereby certify that on September 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/Chance Weldon*
CHANCE WELDON