No. 26-10696

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Temple Gun Club, Incorporated; Jeffrey Howard; Jason Armstrong; Clark Miracle,

Plaintiffs-Appellants,

v.

Todd Wallace Blanche, U.S. Attorney General; Daniel Driscoll, Acting Director, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives; Brian Garner, in his official capacity as Special Agent in Charge of the Dallas Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Michael Weddel, in his official capacity as Special Agent in Charge of the Houston Field Division of the Bureau of Alcohol, Tobacco, Firearms and Explosives,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Texas

## RESPONSE TO PETITION FOR INITIAL HEARING EN BANC

BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL S. RAAB
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION .......... 1

STATEMENT .......... 2

ARGUMENT .......... 5

A. Initial Hearing En Banc Is Not Warranted .......... 5

B. Section 922(o) Reflects A Valid Exercise Of Congress's Authority .......... 8

CONCLUSION .......... 14

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Plaintiffs petition for initial hearing en banc of their claim that a federal statute prohibiting the transfer and possession of certain machineguns is invalid—both facially and as applied to plaintiffs—as exceeding Congress's enumerated powers. That petition should be denied.

This appeal does not warrant the unusual step of en banc consideration—much less forgoing the normal appellate process of initial panel consideration. Plaintiffs do not identify any inter- or intra-circuit conflict on the question presented. To the contrary, every court of appeals to have considered the question (including this one) has concluded that the challenged federal statute is constitutional. Nor does this case present a question of exceptional importance. And although plaintiffs emphasize that panel precedent likely forecloses their claim, that fact alone does not justify en banc consideration. Nor does it justify initial en banc, as panel consideration may helpfully refine and focus the issues presented in this appeal.

In any event, this Court's precedent upholding the federal prohibition is correct, and there is no sound basis for reconsidering that conclusion en banc. The relevant statute applies directly to regulate much commercial activity, foreclosing plaintiffs' facial challenge. And even as applied to the purely intrastate possession of machineguns, Congress had a rational basis for concluding that such possession may substantially affect interstate commerce. That conclusion is particularly reasonable in light of the comprehensive federal scheme regulating the commercial manufacture,

importation, and sale of machineguns. In the context of such a scheme, Congress may validly "ensnare[] some purely intrastate activity" because the "failure to regulate the intrastate manufacture and possession of" machineguns "would leave a gaping hole" in the interstate regulatory framework. *Gonzales v. Raich*, 545 U.S. 1, 22 (2005).

## STATEMENT

**1.** For nearly a century, federal law has substantially regulated the manufacture, transfer, and possession of machineguns in a variety of ways. Since the enactment of the National Firearms Act in 1934, machineguns have been subject to a comprehensive scheme of taxation, registration, and approval. *See generally* 26 U.S.C. §§ 5801-5849. And since the enactment of the Gun Control Act of 1968, the commercial manufacture, importation, and distribution of machineguns—like all other firearms—has been subject to a comprehensive scheme of licensing, recordkeeping, serialization, and other requirements. *See generally* 18 U.S.C. §§ 921-934.

Until 1986, however, federal law did not categorically prohibit members of the general public from possessing machineguns or the transfer of machineguns by or to members of the general public, so long as the possession or transfer complied with all applicable registration, tax, and transfer requirements. That changed when the Firearms Owners Protection Act amended the Gun Control Act to add 18 U.S.C. § 922(o), which makes it "unlawful for any person to transfer or possess a machinegun," subject to two exceptions: first, for "a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or

a State, or a department, agency, or political subdivision thereof," and second, for "any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect." The statute became effective on May 19, 1986, *see* Pub. L. No. 99-308, § 110(c), 100 Stat. 449, 461, thus "freez[ing] the number of legal machine guns in private hands at its 1986 level," *United States v. Kenney*, 91 F.3d 884, 885 (7th Cir. 1996).

This Court has concluded that § 922(o) reflects a valid exercise of Congress's Commerce Clause authority. *See United States v. Knutson*, 113 F.3d 27 (5th Cir. 1997) (per curiam). At the outset, the Court recognized that "much of the conduct covered by" the statute "fits comfortably within Constitutional bounds," because "the vast majority of machinegun possessions constitute the culminating step in interstate commercial transactions." *Id.* at 29; *see also id.* at 29-30 ("As such, § 922(o) represents Congressional regulation of an item bound up with interstate attributes[.]" (quotation omitted)). And, the Court further held, there was "convincing evidence" that the possession of machineguns has "a substantial effect on interstate commerce in the extensive legislative histories" that have accompanied "a durable line of federal machinegun regulations." *Id.* at 30. In particular, the Court identified evidence showing that Congress has rationally "view[ed] the availability of machineguns, violent crime, and narcotics trafficking as parts of one larger problem" substantially affecting interstate commerce. *Id.* at 30-31 (footnote and quotation omitted). The Court thus held that § 922(o) is constitutional. *See id.* at 31.

That conclusion accords with the conclusions of every other court of appeals to address the question whether § 922(o) is a valid exercise of Congress's authority. *See United States v. Franklyn*, 157 F.3d 90, 96 (2d Cir. 1998); *United States v. Rybar*, 103 F.3d 273, 285 (3d Cir. 1996); *United States v. Beuckelaere*, 91 F.3d 781, 784 (6th Cir. 1996); *United States v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996); *United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir. 1992); *United States v. Stewart*, 451 F.3d 1071, 1078 (9th Cir. 2006); *United States v. Wilks*, 58 F.3d 1518, 1521-22 (10th Cir. 1995); *United States v. Wright*, 117 F.3d 1265, 1270-71 (11th Cir. 1997); *see also National Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041, 1047 (D.C. Cir. 1997) (agreeing that § 922(o) is a valid regulation of interstate commerce).

**2.** Plaintiffs are an organization and three individual members of the organization. *See* ROA.8-11. Two of the individual plaintiffs allege that they currently possess firearms "that could feasibly be converted into machineguns"; that they have "plans to learn how to" accomplish that conversion; and that, but for the federal prohibition, they "would convert some of [their] existing firearms into machineguns." ROA.10-11. The third individual plaintiff alleges that he possesses a federal firearms license "that authorizes him to engage in the business of dealing firearms, which includes gunsmithing," and that but for the federal prohibition, he "would convert some of his existing, personally owned firearms into machineguns." ROA.11.

Plaintiffs' single claim is that "both on its face and as applied," § 922(o) "exceeds Congress's enumerated powers." ROA.25. Plaintiffs thus seek a declaration

to that effect and an injunction prohibiting the government from enforcing § 922(o) against plaintiffs. ROA.25-26.

The government moved to dismiss plaintiffs' complaint as foreclosed by *Knutson*. In response, plaintiffs contended not only that *Knutson* was "inconsistent with Supreme Court precedent when it was decided," ROA.138, but also that intervening Supreme Court precedent was inconsistent with *Knutson*'s approach, *see* ROA.140-145. The district court granted the government's motion, concluding that it was bound by *Knutson*, and entered final judgment dismissing plaintiffs' complaint. ROA.150-151.

## ARGUMENT

### A. Initial Hearing En Banc Is Not Warranted

Courts of appeals ordinarily hear cases as panels of three judges. *See* 28 U.S.C. § 46(b); Fed. R. App. P. 40(a); *see also, e.g.*, *Davenport v. MacLaren*, 975 F.3d 537, 541 (6th Cir. 2020) (Sutton, J., concurring in the denial of rehearing en banc). The Federal Rules of Appellate Procedure provide that hearing a case en banc "is not favored." Fed. R. App. P. 40(a). Even "rehearing en banc is an extraordinary procedure"—indeed, a petition for en banc rehearing is "the most abused prerogative of appellate advocates in the Fifth Circuit." 5th Cir. I.O.P. 40; *see also id.* (noting that "[f]ewer than 1% of the cases decided by the court on the merits are reheard en banc"). And initial hearing en banc is particularly extraordinary. The "orderly and customary" procedure is not to hear a case en banc before a panel of the Court has heard the case at all. *Belk*

*v. Charlotte-Mecklenburg Bd. of Educ.*, 211 F.3d 853, 854 (4th Cir. 2000) (Wilkinson, C.J., concurring in the denial of an initial hearing en banc).

Plaintiffs provide no sound reason for this Court to hear this case en banc, much less for this Court to bypass the normal course of appellate review in doing so. Plaintiffs do not identify any inter- or intracircuit conflict implicated by this Court's precedent upholding § 922(o). *See* Fed. R. App. P. 40(b)(2)(A), (C). To the contrary, as explained, every court of appeals to have addressed the question has concluded that the statute reflects a proper exercise of Congress's authority.

Nor do plaintiffs demonstrate that the Commerce Clause question is sufficiently important to justify en banc review in the absence of any such conflict. In the main, plaintiffs contend (Pet. 14-15) that the importance of the question is demonstrated by this Court's deciding four other Commerce Clause challenges "[i]n the past decade alone." But such a smattering of cases hardly reflects an issue of "exceptional importance." Fed. R. Civ. P. 40(b)(2)(D). And indeed, that each previous case identified by plaintiffs was resolved by a panel—not the en banc Court—only underscores that this case too does not warrant the extraordinary step of en banc treatment.

Plaintiffs additionally contend that initial hearing en banc "is warranted because *Knutson* forecloses relief before a panel." Pet. 5 (formatting altered). But of course, many litigants raise claims that are foreclosed by panel precedent; that fact alone does

not justify the extraordinary step of en banc review—much less initial hearing en banc.

Regardless, it is not at all obvious that panel review would be a "meaningless formality," Pet. 5, in this case. Plaintiffs contend that *Knutson*'s analysis is inconsistent with intervening Supreme Court precedent. *See* Pet. 10-13. Although the government disagrees with plaintiffs on the merits of that argument, a panel would be able to evaluate in the first instance the vitality of *Knutson* in light of that more recent precedent. Moreover, as plaintiffs observe, this Court will soon rehear en banc "a Commerce Clause challenge to a separate provision of § 922." Pet. 6. Once that en banc proceeding is resolved, a panel could evaluate whether and to what extent the en banc Court's reasoning implicates the question presented in this case. And in any event, even if this Court were later to conclude that further review is necessary, a panel decision following briefing and argument may "refine, narrow, and focus" the issues for the full Court's consideration, *Belk*, 211 F.3d at 854 (Wilkinson, C.J., concurring in the denial of an initial hearing en banc)—such as by considering whether any threshold questions may impair the Court's ability to resolve plaintiffs' claim on the merits and by bringing into sharper focus the particular contours of plaintiffs' as-applied challenge to § 922(o).

### B. Section 922(o) Reflects A Valid Exercise Of Congress's Authority

Initial hearing en banc is further unwarranted in this case because *Knutson* was correctly decided. Indeed, contrary to plaintiffs' suggestion, more recent Supreme Court precedent underscores *Knutson*'s conclusion, rather than undermines it.

1. Section 922(o) reflects a valid exercise of Congress's Commerce Clause authority, particularly as augmented by the Necessary and Proper Clause. Under that authority, Congress may properly regulate "the use of the channels of interstate commerce"; the "instrumentalities of interstate commerce"; and "activities which have a substantial relation to interstate commerce," that is, "those activities that substantially affect interstate commerce." *United States v. Knutson*, 113 F.3d 27, 29 (5th Cir. 1997) (per curiam) (quotation omitted). As *Knutson* explained, many applications of § 922(o) "fit[] comfortably within Constitutional bounds under either of the first two" categories, as the statute applies to prohibit the commercial transfer of covered machineguns and prohibits the transfer and possession of covered machineguns that have themselves moved in interstate commerce. *Id.* Those applications alone suffice to foreclose plaintiffs' facial challenge to the statute. *Cf. Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (explaining that, to prevail on a facial challenge, the plaintiffs must "establish[] that no set of circumstances exists under which the law would be valid" or that "the law lacks a plainly legitimate sweep" (alteration and quotation omitted)).

Moreover, even as applied to intrastate possession of machineguns, § 922(o) will often be plainly constitutional, "as the vast majority of machinegun possessions constitute the culminating step in interstate commercial transactions." *Knutson*, 113 F.3d at 29. And even in the "rare yet conceivable instance[] of purely non-commercial intrastate possession," § 922(o) may be validly applied because "all transfers and possessions of machineguns" may "substantially affect interstate commerce." *Id.* at 30. That is true for a number of reasons. For one, by targeting "the possession of machine guns," § 922(o) operates "as a demand-side measure to lessen the stimulus" for acquiring machineguns in interstate transactions. *Id.* (quotation omitted). Moreover, by "freezing the number of legally possessed machine guns at 1986 levels," § 922(o) plainly has an "effect that is closely entwined with interstate commerce." *Id.* (quotation omitted). And Congress has rationally determined that the possession of machineguns "interferes with federal drug enforcement," "appeal[s] to interstate organized crime," and undermines "the ability of law enforcement to fight violent crime and narcotics trafficking." *Id.* at 30-31 (quotation omitted).

The constitutionality of § 922(o) is confirmed by the Supreme Court's post-*Knutson* decision in *Gonzales v. Raich*, 545 U.S. 1 (2005). There, the Court upheld a criminal prohibition on possession of marijuana—including home-grown marijuana—as a valid exercise of Congress's Commerce Clause authority. In reaching that conclusion, the Court explained that Congress's authority "includes the power to prohibit commerce in a particular commodity," 545 U.S. at 19 n.29, as well as the

power to "regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity," *id.* at 18. That judgment is reviewed for a "rational basis," *id.* at 22, and "[p]rohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product," *id.* at 26. And the Court reiterated that "a strong presumption of validity" was due to Congress's judgments. *Id.* at 28.

It follows a fortiori from *Raich* that § 922(o)'s regulation of intrastate possession of machineguns is valid. As in *Raich*, there is no doubt that Congress can regulate the intrastate possession of machineguns as part of Congress's "larger regulation of economic activity"—including its comprehensive regulation of the commercial manufacture, importation, and distribution of machineguns—if Congress "concludes that failure to regulate that" intrastate possession "would undercut the regulation of the interstate market in that commodity." 545 U.S. at 18, 24 (quotation omitted). That judgment need only be rational, *id.* at 22, and that standard can be met by recognizing that machineguns made or possessed intrastate may also enter the interstate market, *id.* at 19. Indeed, as the Ninth Circuit observed in rejecting a challenge to § 922(o) after *Raich*, the Supreme Court's analysis "could serve as an opinion in this case by simply replacing marijuana and the [Controlled Substances Act]" with "machineguns and section 922(o)." *United States v. Stewart*, 451 F.3d 1071,

1074 n.5 (9th Cir. 2006) (quotation omitted). Indeed, that plaintiffs cannot cleanly identify any clearly segregable wholly intrastate subcategory of machineguns analogous to the home-grown marijuana at issue in *Raich* only underscores that this is an easier case than *Raich*.

2. In response, plaintiffs barely address *Knutson*'s conclusions on their own terms and barely mention the Supreme Court's on-point analysis in *Raich*. Instead, plaintiffs contend (Pet. 7-9) that § 922(o) is relevantly similar to the prohibition on possession of firearms in a school zone held invalid in *United States v. Lopez*, 514 U.S. 549 (1995). And they argue (Pet. 10-13) that § 922(o) would be properly invalidated under the four-part test articulated in *United States v. Morrison*, 529 U.S. 598 (2000). Neither of those contentions has merit.

*Raich* makes clear that *Lopez* and *Morrison* do not apply here. As *Raich* explained, the mode of analysis in *Lopez* and *Morrison* turned on the fact that the statutes there were wholly disconnected from economic activity: *Lopez* involved "the Gun-Free School Zones Act of 1990, which was a brief, single-subject statute making it a crime for an individual to possess a gun in a school zone" and which "did not regulate any economic activity." *Raich*, 545 U.S. at 23. And *Morrison* involved the Violence Against Women Act of 1994, which "created a federal civil remedy for the victims of gender-motivated crimes of violence" but which "did not regulate economic activity" in any respect. *Id.* at 25; *see also id.* at 39 (Scalia, J., concurring in the judgment) ("Neither [*Lopez* nor *Morrison*] involved the power of Congress to exert control over intrastate

activities in connection with a more comprehensive scheme of regulation; *Lopez* expressly disclaimed that it was such a case, and *Morrison* did not even discuss the possibility that it was." (citation omitted)).

*Raich* contrasted the statutes at issue in those cases with the Controlled Substances Act, "a lengthy and detailed statute creating a comprehensive framework for regulating the production, distribution, and possession of" certain controlled substances. 545 U.S. at 24. That framework, the Court explained, regulated "quintessentially economic" activities: the "production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market." *Id.* at 25-26. In that context, the Court concluded that Congress could validly "[p]rohibit[] the intrastate possession or manufacture" of a controlled substance as a "means of regulating commerce in that product"—and that *Lopez* and *Morrison* "cast[] no doubt" on that conclusion. *Id.*

Section 922(o)'s regulation operates in a "nearly identical" fashion to the intrastate regulation upheld in *Raich*. *Stewart*, 451 F.3d at 1074. As explained, § 922(o) itself applies not only to the possession of post-1986 machineguns but also to the transfer—including, in the usual case, the commercial sale—of such machineguns. And the provision operates within the context of a comprehensive federal regulatory scheme that imposes various taxation, registration, approval, and licensing requirements on the commercial manufacture, importation, and sale of machineguns, as explained. The statutory framework thus regulates "quintessentially economic"

activities at every turn. *Raich*, 545 U.S. at 25. Indeed, plaintiffs themselves acknowledge that "[m]achineguns are highly regulated at the federal level" and that the National Firearms Act "provides a comprehensive registration and licensing scheme" for machineguns, which plaintiffs "do[] not challenge." ROA.23.

In the context of such a comprehensive scheme of federal regulation of related economic activity, the principles articulated in *Lopez* and *Morrison* have no purchase, as *Raich* makes clear. To the contrary, given that overarching regulatory scheme, Supreme Court precedent "foreclose[s] the claim that a locally [made machinegun] that is used domestically rather than sold on the open market is not subject to federal regulation." *Stewart*, 451 F.3d at 1076 (quotation omitted).

## CONCLUSION

For the foregoing reasons, the petition for initial hearing en banc should be denied.

Respectfully submitted,


BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL S. RAAB

*s/ Sean R. Janda*
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*
*sean.r.janda@usdoj.gov*


October 2026

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)(A), (g), because it contains 3098 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda